FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2021 JUN 30 PM 3:09

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

(To be supplied by the court)

TEDDY T. PITTMAN

_____, Plaintiff

v.

CITY OF AURORA

_____,

CHRISTOPHER YARBOROUGH

_____,

JOSIAH COE

_____,

SGT. JEREMY SEXTON

_____,

SEE ATTACHED FORM

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## COMPLAINT

**LIST OF DEFENDANTS ON THIS CLAIM (Continued):**

DEJON MARSH,
JULIE STAHNKE,
CHRISTOPHER MOWRY,
JOSEPH P. CORNELL,
PATRICK SHAKER,
CHAD W. ELLIOTT,
JACOB TUBS,
PAUL B. JEROTHE,
JEFFREY JACOBS,
JEREMIAH MILES,
EDWARD A. BROOKS,
MICHAEL DIECK,
RHETT FOX,
JOSHUA SCHOOLMASTER,
KEVIN BARNES,
CASSIDEE CARLSON,
TYLER REISSLAND,
STEPHEN R. EDWARDS,
BEAU EWEN,
KINDEL R. PADILLA,
DAVID S. WALKER,
JEFF PRINCE,
ROBERT FRIEL,
PATRICIA PEREA
CHILDREN'S HOSPITAL COLORADO,
DR. TARA NEUBRAND,
TAYLOR MANCE,
COLORADO DEPARTMENT OF HUMAN SERVICES,
ALEXANDRA HONNY,
NICOLE YOUNG,
BAILEY McGUINNESS,

Defendant(s).

<div style="border:1px solid black">

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

</div>

### A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Teddy T. Pittman 4676 Walden Ct. Denver, CO 80249
   (Name and complete mailing address)

 ttpittman1979@yahoo.com   (303) 669-2121
   (Telephone number and e-mail address)

### B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    CITY OF AURORA  15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                 (303)627-3100
                (Telephone number and e-mail address if known)

Defendant 2:     CHRISTOPHER YARBOROUGH 15001 E. Alameda Pkwy. Aurora, CO
                80012
                (Name and complete mailing address)

                 (303) 627-3100
                (Telephone number and e-mail address if known)

3

Defendant 3:    JOSIAH COE  15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 4:    SGT. JEREMY SEXTON   15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 5:    DEJON MARSH    15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 6:    JULIE STAHNKE    15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 7:    CHRISTOPHER MOWRY  15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 8:    JOSEPH P. CORNELL  15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)


Defendant 9:    PATRICK SHAKER    15001 E. Alameda Pkwy. Aurora, CO 80012
                (Name and complete mailing address)

                (303) 627-3100
                (Telephone number and e-mail address if known)

4

Defendant 10:    CHAD W. ELLIOTT    15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 11:    JACOB TUBS   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 12:    PAUL B. JEROTHE   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 13:    JEFFREY JACOBS   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 14:    JEREMIAH MILES  15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 15:    EDWARD A. BROOKS   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 16:    MICHAEL DIECK   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 17:    RHETT FOX   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

5

Defendant 18:    JOSHUA SCHOOLMASTER   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 19:    KEVIN BARNES   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 20:    CASSIDEE CARLSON  15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 21:    TYLER REISSLAND  15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 22:    STEPHEN R. EDWARDS   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 23:   BEAU EWEN   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 24:    KINDEL R. PADILLA   15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 25:    DAVID S. WALKER     15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 26:    JEFF PRINCE    15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 27:    ROBERT FRIEL    15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 28:    PATRICIA PEREA    15001 E. Alameda Pkwy. Aurora, CO 80012
(Name and complete mailing address)

(303) 627-3100
(Telephone number and e-mail address if known)

Defendant 29:    CHILDREN'S HOSPITAL OF COLORADO 13123 E. 16th Ave. Aurora, CO 80045
(Name and complete mailing address)

(720) 777-1234
(Telephone number and e-mail address if known)

Defendant 30:    DR. TARA NEUBRAND 13123 E. 16th Ave. Aurora,CO 80045

(Name and complete mailing address)

(720) 777-1234
(Telephone number and e-mail address if known)

Defendant 31:    TAYLOR MANCE 13123 E. 16th Ave. Aurora,CO 80045

(Name and complete mailing address)

(720) 777-1234
(Telephone number and e-mail address if known)

Defendant 32:    COLORADO DEPARTMENT OF HUMAN SERVICES 1575 Sherman St. Denver, CO 80203
(Name and complete mailing address)

(303) 866-5700
(Telephone number and e-mail address if known)

7

Defendant 33:    ALEXANDRA HONNY 1575 Sherman Street.Denver, CO 80203

        (Name and complete mailing address)

        (303) 866-5700
        (Telephone number and e-mail address if known)


Defendant 34:    NICOLE YOUNG 1575 Sherman Street.Denver, CO 80203
        (Name and complete mailing address)

        (303) 866-5700
        (Telephone number and e-mail address if known)


Defendant 35:    BAILEY McGUINNESS 1575 Sherman Street.Denver, CO 80203
        (Name and complete mailing address)

        (303) 866-5700
        (Telephone number and e-mail address if known)


## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*


__X__ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

        List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.
42 U.S.C. §1983, Fourth Amendment and Fourteenth Amendment


        Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

        Plaintiff is a citizen of the State of COLORADO_____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of  _COLORADO_____
(name of state or foreign nation).

Defendant 1 has its principal place of business in COLORADO (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*
If Defendant 2 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 3 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 4 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 5 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 6 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 7 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 8 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 9 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 10 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 11 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 12 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 13 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 14 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 15 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 16 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 17 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 18 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 19 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 20 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 21 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 22 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 23 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 24 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 25 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 26 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 27 is an individual, Defendant 1 is a citizen of _COLORADO._ .

If Defendant 28 is an individual, Defendant 1 is a citizen of _COLORADO._ .

Defendant 29 is incorporated under the laws of _COLORADO_____
(name of state or foreign nation).

Defendant 29 has its principal place of business in COLORADO (name of state or foreign nation).

If Defendant 30 is an individual, Defendant 1 is a citizen of _COLORADO._

If Defendant 31 is an individual, Defendant 1 is a citizen of _COLORADO._

Defendant 32 is incorporated under the laws of _COLORADO_____
(name of state or foreign nation).

Defendant 32 has its principal place of business in COLORADO (name of state or foreign nation).

If Defendant 33 is an individual, Defendant 1 is a citizen of COLORADO.

If Defendant 34 is an individual, Defendant 1 is a citizen of _COLORADO._

If Defendant 35 is an individual, Defendant 1 is a citizen of _COLORADO._

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

**CLAIM ONE:**   Fourth and Fourteenth Amendment--Malicious Prosecution (Sept. 30, 2019 Warrantless Arrest)

Supporting facts:

1. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

2. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

3. This claim one is being leveled against Defendants Children's Hospital Colorado (CHC), Dr. Tara Neubrand, Taylor Mance, Colorado Department of Human Services (CDHS), Alexandra Honny, Nicole Young, City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, in their individual and official capacities, as employees of CHC, CDHS, Aurora.

## A. INTRODUCTION

4. This civil action, filed by Teddy T. Pittman, herein "Plaintiff," encompasses unlawful searches and seizures of Plaintiff's person and property by Defendants, and subjecting Plaintiff to warrantless arrests, where none of the Defendants at any time had probable cause to search or arrest Plaintiff person or property, effectively violating Plaintiff's Fourth and Fourteenth

11

Amendment rights to the United States Constitution.

5. Defendants had an independent motive to subject Plaintiff to reprisals, and collectively encouraged, promoted and/or participated in an overall objective to subject Plaintiff to unlawful searches and seizures.

## B. FACTUAL ALLEGATIONS

6. On September 30, 2019, Plaintiff's girlfriend Angela Finley, was preparing to leave their residence, located at 19978 E. Eastman Dr., to run errands.

7. Angela was carrying Plaintiff's son E.P. in her arms as she was preparing to walk outside.

8. Plaintiff's son E.P., is his son from a previous relationship, and was two (2) years old at the time of the incident.

9. Plaintiff also has a son Z.P. with Angela, who was also two (2) years old at the time of the incident.

10. Within seconds of Angela walking outside the house, Plaintiff heard loud screaming, and ran outside to see what happened.

11. When Plaintiff got outside, he found Angela on the ground in the rocks, and E.P. was underneath her.

12. Angela told Plaintiff that she fell in the rocks, and was hurt really badly.

13. Plaintiff helped Angela to her feet, then picked up E.P., and laid him on the couch inside the house.

14. Angela fell again, on the floor inside the house, within a few feet of the front door, and refused to be moved.

15. Angela suffers from a nerve condition, which causes her to go into unpredictable spasms.

16. Angela has fallen and injured herself previously, related to flare ups from the nerve condition.

17. On the day of the aforementioned incident, Angela suffered another flare up from the nerve condition, where the entire right side of her body locked up, which caused her to fall in the rocks, causing injuries to herself and E.P.

18. Plaintiff and Angela, didn't notice E.P. was injured, because he didn't scream or cry and went to sleep.

19. Plaintiff immediately called 911 emergency for Angela.

20. The paramedics arrived, but didn't examine E.P. for injuries.

21. The paramedics transported Angela to the Medical Center of Aurora.

22. Plaintiff and Angela's mother, Margarita Finley, began packing some things for the children, where Margarita could take E.P. and Z.P. to her house, so Plaintiff could go to the hospital to be with Angela.

23. Plaintiff picked up E.P. from the couch and stood him on the ground.

24. Plaintiff and Margarita, noticed that E.P. was favoring his right leg and he started to cry.

25. Plaintiff examined E.P. 's leg and noticed his left leg was swollen.

26. Plaintiff put E.P. in his vehicle, and took him to CHC, a short distance from his residence, where they admitted him.

27. Margarita came to CHC, to be with E.P. and Plaintiff.

28. Plaintiff, explained to Defendants Dr. Tara Neubrand and Nurse Taylor Mance, that Angela fell in the rocks while holding E.P., landing on top of him, related to her medical condition.

29. Defendants Neubrand and Mance began treating E.P.'s injuries.

30. The CHC Defendants took x-rays, and put a splint on E.P.'s leg.

31. Plaintiff was allowed to participate in the entire process, while Defendants Neubrand and Nance treated E.P. 's injuries, to include being present in the x-ray room.

32. Defendants Neubrand and Mance finished E.P.'s treatment, and as Plaintiff waited for E.P. to be discharged, they kept talking to him about allegations surrounding E.P.'s injuries.

33. Plaintiff's explanation, related to Angela falling in the rocks, landing on top of E.P., should've ended Defendants Neubrand and Mance's suspensions.

34. Instead, Defendants Neubrand and Mance, contacted Defendants Alexandra Honny and Nicole Young, employees of the CDHS, with false accusations of Plaintiff causing E.P.'s injuries.

35. Defendants Honny and Young, approached Plaintiff in the hospital, with questions surrounding E.P.'s injuries.

36. Plaintiff explained to Defendants Honny and Young, that Angela fell in the rocks, landing on top of E.P., while she was holding him.

37. Plaintiff's explanation should've ended any suspensions, regarding the cause of E.P.'s injuries.

38. Defendants Neubrand, Mance, Honny and Young, didn't have reason to believe that Plaintiff

13

caused the injuries to his son, nor a legal basis to take his son into their custody.

39. Instead of discharging E.P. from the hospital, Defendants Neubrand, Mance, Honny and Young, concocted a plan to separate Plaintiff from his son.

40. Defendants Neubrand and Mance began telling Plaintiff that they needed to conduct more x-rays on E.P., and that he couldn't be present.

41. Upon information and belief, this was a ploy to separate Plaintiff from his son, whereas the CDHS Defendants could take E.P. into their custody without probable cause.

42. Plaintiff requested Defendants Neubrand and Mance show him hospital policies that authorized them to take E.P. out of his presence, without his authorization or probable cause.

43. When Defendants Neubrand and Mance refused to produce the policies, he began recording the incident.

44. Defendants Neubrand and Mance, demanded Plaintiff to stop recording, stating, "it was against hospital policy."

45. When Plaintiff refused to stop recording their misconduct, the CHC Defendants called security, and requested he be removed from CHC without his son.

46. Plaintiff refused to leave the hospital without his son, until he received proper discharge papers.

47. Plaintiff called the police to make a report, and request assistance, regarding Defendants attempt to make him leave the hospital without his son. The CHC Defendants called the police as well.

48. Police Officer Christopher Yarborough, Max Schoolmaster, Josiah Coe, Jeremy Sexton, and Dejon Marsh, arrived on scene.

49. Plaintiff explained to Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, that Angela fell in the rocks while holding E.P., landing on top of him, related to her medical condition.

50. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, spoke with Margarita, away from Plaintiff and the hospital Defendants.

51. Margarita verified that Angela fell while holding E.P., landing on top of him in the rocks, due to her medical condition.

52. Margarita explained that Angela suffers from a nerve condition, which causes her to go into spasms.

14

53. Margarita explained that Angela has fallen and injured herself before, related to flare ups from the condition.

54. Margarita explained that Angela suffered another flare up when she fell in the rocks while holding E.P.

55. Margarita explained that the whole right side of Angela's body had locked up.

56. Margarita explained that when paramedics arrived, they examined Angela, but did not examine E.P.

57. Margarita explained that she saw Plaintiff pick up E.P. from the couch and stand him on the ground.

58. Margarita explained that E.P.'s left leg moved in a strange way and he started to cry.

59. Margarita explained that Plaintiff tried calling 911 twice but got a busy signal so he took E.P. to Children's Hospital.

60. The police officer Defendants, knew Margarita's version of the events, contradicted the CHC and CDHS Defendants suspicions, regarding the cause of E.P.'s injuries, and vitiated probable cause.

61. The police officer Defendants, failed to inform the CHC and CDHS Defendants, that the matter was civil in nature.

62. The police officer Defendants, failed to inform the CHC and CDHS Defendants, that they didn't have the authority to make Plaintiff leave the hospital without his son.

63. The police officer Defendants, failed to inform the CHC and CDHS Defendants, that probable cause didn't exist to lead a reasonable police officer to believe that Plaintiff had committed any crimes.

64. With knowledge of exculpatory evidence, Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, disregarded Plaintiff's constitutional rights to due process, and conspired with the CHC and CDHS Defendants, to separate him and the child.

65. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, attacked Plaintiff in the hospital, forcefully took E.P. out of his care and control, and placed him under arrest.

66. Defendant Coe grabbed Plaintiff from behind and held him tightly, while Defendant Yarborough grabbed his right arm and Defendant Schoolmaster grabbed his left arm.

67. When Defendants Yarborough and Schoolmaster pried Plaintiff's arms apart, placing both arms in a "twist lock," causing substantial pain, while Defendants Marsh and Sexton forcefully

15

took E.P. out of Plaintiff's arms.

68. Defendants Coe, Yarborough, and Schoolmaster forcefully took Plaintiff to the ground, where his back and back of his head hit the ground with the force of the Defendants weight, and rolled him to his stomach, and placed him in handcuffs.

69. Defendant Coe, advised Plaintiff that he was under arrest and conducted a pat search of his person.

70. Defendant Coe walked Plaintiff to Defendant Yarborough's police car and placed him inside the vehicle.

71. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, arrested Plaintiff and charged him with Disorderly Conduct and Failure to Obey a Lawful Order.

72. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, didn't have the authority, legal justification, or probable cause, to forcefully take E.P. into their custody and control, without providing Plaintiff due process of law.

73. The false Disorderly Conduct and Failure to Obey Lawful Order charges, were leveled against Plaintiff, in an attempt to cover up their misconduct and constitutional violations.

74. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

75. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

76. The Defendant Officers identified above accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

77. The Defendant Officers identified above submitted false statements and police reports, to cover-up their misconduct and for the purpose of misleading the issuing Magistrate and prosecution, to make a probable cause finding and to cause false criminal charges to be filed against Plaintiff.

78. The statements made by the Defendant Officers, regarding Plaintiff's alleged culpability, were made with knowledge that said statements were false and perjured.

79. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

80. While the aforementioned misconduct took place, the Defendant Officers identified above, personally participated in the misconduct or failed to intervene.

16

81. The misconduct described in this Count, was undertaken with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

82. As a result of the misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

83. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM TWO: <u>Fourth and Fourteenth Amendment- Malicious Prosecution (October 1, 2019 Warrantless Arrest):</u>**

Supporting Facts:

84. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

85. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

86. This claim two is being leveled against Defendants Children's Hospital Colorado (CHC), Dr. Tara Neubrand, Taylor Mance, Colorado Department of Human Services (CDHS), Alexandra Honny, Nicole Young, Bailey McGuinness, City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, Christopher Mowry, Joseph P. Cornell, Patrick Shaker, Chad W. Elliott, Jacob Tubbs, Paul B. Jerothe, Jeffrey Jacobs, Jeremiah Miles, Edward A. Brooks, Michael Dieck, Rhett Fox, Joshua Schoolmaster, Kevin Barnes, Cassidee Carlson, Tyler Riessland, Stephen R. Edwards, Beau Ewen, Kindel R. Padilla, David S. Waller, Jeff Prince, Robert Friel, and Patricia Perea, in their individual and official capacities, as employees of CHC, CDHS, and Aurora.

87. On October 1, 2019, Plaintiff bonded out of the Aurora Detention Center, from the false Disorderly Conduct and Failure to Obey Lawful order charges, stemming from the September 30, 2019 arrest at the hospital.

88. Upon being released, Plaintiff got a ride home from the jail.

89. Plaintiff headed to Margaritas house to pick up Angela and his son Z.P.

90. Angela needed Plaintiff to take her to pick up her vehicle from the hospital.

91. Plaintiff followed Angela back to Margarita's house, to pick up Z.P. and return home. When Angela came back outside with Z.P., he saw a couple of strange women rush up to Angela in

17

front of the house.

92. Plaintiff didn't know the women, what they wanted, what they were talking to Angela about, or why they were at Margarita's house.

93. It appeared to Plaintiff that Angela no longer needed him, so he decided to get his son Z.P., and go home to the house he shared with Angela.

94. Plaintiff got out of his car, picked up his son Z.P., put him in the car and went home.

95. During the time Plaintiff was at Margaritas house, no one ever presented or served him with a court order, related to CDHS having temporary custody of Z.P. so he left.

96. Upon information and belief, on 10/01/2019, Detective Julie Stahnke, contacted Arapahoe County Department of Human Services Caseworker Bailey McGuinness.

97. Defendant McGuinness advised Defendant Stahnke, that she was concerned, because no observed Z.P.

98. Defendant McGuinness told Defendant Stahnke, that she was trying to contact Plaintiff and Angela, to check the welfare of Z.P.

99. Upon information and belief, that statement was false, because Defendant McGuinness seen Z.P. the same day, and admitted he was healthy.

100. Around 3:00pm, Defendant McGuinness called the police, to make a false report of Z.P. being kidnapped and in danger.

101. Defendant McGuinness knew Z.P. was healthy, and that Plaintiff wasn't properly served with notice of Z.P. being placed in CDHS custody.

102. Defendant McGuinness omitted, in her request for a "VERBAL ORDER FOR CUSTODY," that Angela fell in the rocks while holding E.P., landing on top of him, related to her medical condition.

103. Defendant McGuinness never mentioned to the issuing Judge, that Angela's fall accident could've caused E.P.'s injuries.

104. Between 5:02pm-6:58pm, several APD officers arrived at Margaritas house, to include Defendants Mowry, Cornell, Shaker, Sexton, Yarborough, Elliott, Tubbs, Jerothe, Jacobs, Miles, Stahnke, Friel, and Perea.

105. Several of the police officers, were involved in the first illegal arrest of Plaintiff at the hospital.

106. The above-mentioned APD Defendants turned Margaritas house into a command center,

18

and were going back and forth, in and out of the house for several hours.

107. Defendants Mowry and Yarborough, were the initiating officers, and Defendants Sexton and Stahnke were the on scene supervisors.

108. Defendants Mowry, Yarborough, Sexton, and Stahnke, never requested permission from Margarita, to use her home as a command center.

109. Defendants Mowry, Yarborough, Sexton, and Stahnke, never advised Margarita, Angela, or the occupants of the home, that they were not under arrest and were free to leave.

110. Upon information and belief, Defendants Mowry, Yarborough, Sexton, and Stahnke, suspected Angela of being involved in the September 30th and October 1st incidents.

111. Defendant Mowry, made it clear to Defendant McGuinness, that the police officer Defendants, suspected Angela of being involved in both incidents.

112. Defendant McGuinness, confirmed Defendant Mowry's suspicions, by agreeing that Angela was involved in both incidents.

113. Defendants Mowry, Yarborough, Sexton, Stahnke, Prince, Friel, and Perea, interrogated Angela for approximately four (4) hours, regarding both incidents, and were yelling at her and threatening her.

114. The aforementioned Defendants, subjected Angela to the unlawful interrogation, know she was under duress, in excruciating pain and heavily medicated, related to her injuries from the fall accident.

115. Defendants Mowry, Yarborough, Sexton, Stahnke, Prince, Friel, and Perea, failed to advise Angela of her right to remain silent.

116. Around 5:43pm, Defendant Sexton, authorized dispatch to "START PING FOR Plaintiff's CELL PHONE."

117. A cell phone "ping" is the act of determining the estimated current location of a cell phone.

118. Requests for real-time cell phone locations from carriers count as searches under the Constitution.

119. Under federal law, police officers need a warrant or judge's permission to ping cell phone locations.

120. Defendant Sexton made this request over the Computer-aided dispatch system (CAD), after discussing it with the other aforementioned Defendant police officers.

121. Defendant Sexton authorized the search of Plaintiff's real-time location data, without a

19

warrant or exigent circumstances.

122. Defendant Sexton knew E.P.'s injury was caused by Angela's accidental fall.

123. Defendant Sexton knew Defendant McGuinness seen Z.P. minutes before police arrived, that Z.P. was healthy, and there was no reason to believe he was in immediate danger.

124. Defendant Sexton knew Plaintiff wasn't properly served with notice by Defendant McGuinness, regarding Z.P. being placed into CDHS custody.

125. Around 6:15pm, the aforementioned Defendants were able to get a ping on Plaintiff's phone.

126. The ping directed the above-mentioned Defendants to the area of 19978 E. Eastman Ave, the residence Plaintiff shared with Angela.

127. Around 6:24pm, Defendant Brooks found Plaintiff's black durango parked near the address and set-up surveillance.

128. Around 6:30, Defendant Stahnke began interrogating Angela and Margarita about the residence on 19978 E. Eastman Avenue.

129. Defendant Stahnke coerced Angela into waiving and consenting to the APD SWAT TEAM searching the 19978 E. Eastman Avenue residence.

130. Defendant Stahnke coerced Angela into giving her the key to enter 19978 E. Eastman Avenue.

131. Around 7:03pm, Defendant Sexton approached Angela and coerced her to waive and consent to the search of 19978 E. Eastman Avenue.

132. Around 7:28pm, Defendant Sexton approached Angela and coerced her to sign a consent form.

133. Angela couldn't sign the consent form, because she was under duress, heavily medicated, and in excruciating pain.

134. Angela offered to have her mom sign the consent form for her.

135. Defendant Sexton offered to call the paramedics for Angela, but she declined, because she couldn't afford it.

136. Defendant Sexton proposed that Angela just use her initials as a signature.

137. Angela could barely write her initials, because she was under duress, in excruciating pain, and heavily medicated

138. Defendants Stahnke and Sexton, never told Angela about Plaintiff's vehicle being located at

20

their home.

139. Defendants Stahnke and Sexton, knew Angela had been interrogated for close to four (4) hours; was being unlawfully detained; and wasn't given a Miranda Rights' advisement.

140. Defendants Stahnke and Sexton, knew Angela's consent to search the 19978 E. Eastman Avenue residence wasn't valid, because she was under duress, in excruciating pain, and heavily medicated.

141. Defendants Stahnke and Sexton, knew Angela's consent to search the 19978 E. Eastman Avenue residence wasn't valid, because they also needed a waiver and consent from Plaintiff.

142. Based on the aforementioned reasons, the consent to search the 19978 E. Eastman Avenue residence was invalid and tainted.

143. Defendants Stahnke and Sexton's actions, in coercing Angela to consent to the search, infers exigent circumstances didn't exist to enter the residence, although it appears, that was the exception used to search Plaintiff's cell phone location data.

144. Around 7:32pm, the APD SWAT TEAM began converging on the house at 19978 E. Eastman Avenue.

145. The APD SWAT TEAM was composed of Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea.

146. Defendant Riessland, the supervisor on scene, opened the front door to the house and announced the Aurora SWAT TEAM presence.

147. The SWAT TEAM Defendants entered the residence and found Plaintiff inside with Z.P.

148. Plaintiff was on the phone with his mother and holding Z.P., while SWAT TEAM had their assault weapons pointed at Plaintiff and his son. Defendant Riessland and the SWAT TEAM attempted to get Plaintiff to go downstairs into the basement of the house. Plaintiff refused due to his belief that they planned to harm him.

149. The SWAT TEAM Defendants entered Plaintiff's residence without his consent, a warrant, exigent circumstances, or any legal justification.

150. As Plaintiff was taken into custody, the SWAT TEAM Defendants searched the house for other people and searched his vehicles.

151. The SWAT TEAM arrested Plaintiff and charged him with "Violation of Order Relating to Parental Responsibilities and Child Abuse."

152. The SWAT TEAM Defendants didn't have probable cause to arrest Plaintiff for "Child Abuse and Violation of Order Relating to Parental Responsibilities."

153. The false charges were leveled against Plaintiff, in an attempt to cover up the Defendants' misconduct and constitutional violations.

154. The SWAT TEAM Defendants, personally participated in the misconduct or failed to intervene, by not inquiring if Plaintiff consented to the search of his home or obtaining a warrant.

155. When two co-occupants are both present, one consenting and the other rejecting the search of a shared residence, the police may not make a search of that residence within the consent exception to the warrant requirement

156. On October 3, 2019, Defendants Stahnke submitted the case file and an arrest warrant affidavit to the Arapahoe County District Court and Arapahoe County District Attorney's Office, related to the September 30, 2019 and October 1, 2019 incidents.

157. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, falsely averred or claimed, that Plaintiff caused "E.P.'s, injuries, which included a broken femur, fluid around internal organs, bruising behind both ears, and rib fractures that were in various stages of healing."

158. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, falsely averred or claimed, that Defendant McGuinness was very clear to Plaintiff that DHS had custody of Z.P.

159. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, internationally omitted from their reports and arrest warrant affidavit, regarding the September 30, 2019 incident:

(a) that E.P.'s biological mother Ashley, had been reported to CDHS for physically abusing the child; (b) that Plaintiff picked up E.P. from Ashley, and only had E.P. in his care and control, for less than 24hrs prior to discovery of the injuries; (c) that Plaintiff was only with E.P. a couple hours prior to discovery of the injuries; (d) that Angela fell in the rocks while holding E.P., landing on top of him, related to her medical condition; (e) that E.P.'s rib fracture injury showed signs of advanced healing, that were at least 2-3 weeks old; and that E.P. had been in the care and control of multiple people, within 24hrs prior to discovery of the injuries, to include, but not limited to, a Day Care Center, Angela, Ashley, Margarita, and Plaintiff.

22

160. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, internationally omitted from their reports and arrest warrant affidavit, regarding the October 1, 2019 incident:

(a) that Defendant McGuinness never properly served Plaintiff with the Court Order, relating to parental responsibilities, to put him on notice that CDHS had temporary custody of Z.P.

161. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, did not have facts or circumstances within their knowledge at any time, that would lead a prudent person to believe Plaintiff committed any crimes.

162. On October 3, 2019, Plaintiff appeared before a Magistrate in custody, for an advisement hearing.

163. On October 8, 2019, Plaintiff appeared in court for filing of charges, and was formally charged.

164. On October 25, 2019, Defendant Stahnke went to Little Steps Learning Center and contacted the Assistant Director, Hodi Abdi, and teacher Lamia Ramdane.

165. Defendant Stahnke discovered that on September 30, 2019, around 6:10am, Angela dropped off E.P. to the daycare center.

166. When Angela dropped him off, he was sleeping, so Angela then laid him down on the children's mats.

167. Angela gave them her phone number and told them to call her if there was anything wrong with E.P. or if he was not feeling well.

168. When the staff woke E.P. up for breakfast around 7:00am, E.P. was not putting weight on his leg.

169. Little Steps staff immediately called Angela to tell her that something was wrong with Ezekiel's leg and he was not bearing weight on it.

170. Angela did not respond to Little Steps until around 9:18 am.

171. They expressed to Angela that they were concerned, and advised her E.P. needed to be seen by a doctor.

172. Angela said she was going to take him to the doctor.

23

173. CHC Medical Records revealed E.P. was seen in the emergency department at 3:57 pm on September 30th.

174. When Defendant Stahnke spoke to Angela about the information received from Little Steps, Angela changed her story and said she went to pick-up E.P. because Plaintiff called her and asked her to pick him up.

175. Angela initially said she didn't feel good and left work early because she was sick and picked up E.P. on her way home.

176. Upon information and belief, the aforementioned evidence is exculpatory in nature, however, Defendant Stahnke failed to produce this evidence in Plaintiff's case, and inform the court and prosecution that the evidence, in combination with the other evidence, diminished culpability and demonstrated Plaintiff's innocence.

177. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

178. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

179. The Defendant Officers identified above, accused Plaintiff of criminal activity knowing those accusations to be without probable cause.

180. The Defendant Officers identified above, made statements to prosecutors, with the intent of exerting influence to institute and continue the judicial proceedings.

181. The statements of the Defendant Officers, regarding Plaintiff's alleged culpability, were made with knowledge that said statements were false and perjured.

182. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

183. While the aforementioned misconduct took place, the Defendant Officers identified above, personally participated in the misconduct or failed to intervene.

184. The misconduct described in this Count II was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

185. As a result of the misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

186. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM THREE: <u>Fourth Amendment- Illegal Search and Seizure (September 30, 2019 Warrantless Arrest);</u>**

Supporting Facts:

187. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

188. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

189. This claim three is being leveled against Defendants City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, in their individual and official capacities, as employees of Aurora.

190. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, stopped and detained Plaintiff for recording CHC and CDHS Defendants with his cell phone.

191. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, lacked legal authority or probable cause to order Plaintiff to stop recording.

192. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh,  lacked legal authority or probable cause to order Plaintiff to leave the hospital.

193. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh,   lacked legal authority or probable cause to forcefully take E.P. out of Plaintiff's care and control, based on unfounded speculation that Plaintiff caused E.P.'s injuries.

194. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, placed Plaintiff under arrest, although they lacked probable cause to arrest Plaintiff.

195. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh,   lacked probable cause to seize and search Plaintiff's person.

196. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh,   accused Plaintiff of criminal activity knowing those accusations to be without probable cause.

197. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, made statements to prosecutors, with the intent of exerting influence to institute and continue the judicial

25

proceedings.

198. The statements of the Defendant Officers, regarding Plaintiff's alleged culpability, were made with knowledge that said statements were false and perjured.

199. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

200. While the aforementioned misconduct took place, the Defendant Officers identified above, personally participated in the misconduct or failed to intervene.

201. The Defendant Officers acts were objectively unreasonable.

202. The Defendant Officers acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

203. The Defendant Officers deprivation of Plaintiff's rights caused his damages.

204. The Defendant Officers acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.

205. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

## CLAIM FOUR: Fourth Amendment- Illegal Search and Seizure (October 1, 2019 Warrantless Arrest)::

Supporting Facts:

206. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

207. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

208. This claim four is being leveled against Defendants City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, Christopher Mowry, Joseph P. Cornell, Patrick Shaker, Chad W. Elliott, Jacob Tubbs, Paul B. Jerothe, Jeffrey Jacobs, Jeremiah Miles, Edward A. Brooks, Michael Dieck, Rhett Fox, Joshua Schoolmaster, Kevin Barnes, Cassidee Carlson, Tyler Riessland, Stephen R. Edwards, Beau Ewen, Kindel R. Padilla, David S. Waller, Jeff Prince, Robert Friel, and Patricia Perea, in their individual and official capacities, as employees of CDHS and Aurora.

26

209. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, and Tubbs, either authorized or participated in the search of Plaintiff's real-time cell phone location data, without a warrant or exigent circumstances.

210. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, and Tubbs, knew, or should have known, that the search of Plaintiff's real-time cell phone location data was unlawful due to the lack of probable cause or exigent circumstances.

211. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, and Tubbs, coerced Angela into waiving and consenting to the APD SWAT TEAM searching the residence she shared with Plaintiff.

212. The consent and waiver was procured while Angela was under duress, related to high number of police presence, and by the above mentioned Defendants yelling at her and threatening her.

213. The consent and waiver was also procured while Angela was under duress, related to her being heavily medicated and in excruciating pain, due to her medical condition and injuries.

214. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, and Tubbs, knew, or should have known, that the consent to search Plaintiff's residence was invalid.

215. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, and Waller, either authorized or participated in the search of Plaintiff's house, without a warrant or exigent circumstances.

216. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, and Waller, knew, or should have known, that the warrantless search of Plaintiff's home was unlawful, due to the lack of probable cause or exigent circumstances.

217. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, and Waller, placed Plaintiff under arrest, although they lacked probable cause to arrest him.

218. Because the arrest and search could not be executed without a warrant, and because Defendant officers lacked the authority to arrest Plaintiff or search his home, the execution of the warrantless arrest and search was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable searches and seizures.

27

219. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, Tubbs, Jerothe, Jacobs, Miles, Brooks, Dieck, Fox, Schoolmaster, Barnes, Carlson, Riessland, Edwards, Ewen, Padilla, Waller, Prince, Friel, and Perea, knew, or should have known, that the warrantless arrest and search of Plaintiff's home was invalid, because the circumstances that lead to the arrest and search were in violation of Plaintiff's constitutional rights, namely the events outlined in Counts I and II of this Complaint.

220. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, Tubbs, Jerothe, Jacobs, Miles, Brooks, Dieck, Fox, Schoolmaster, Barnes, Carlson, Riessland, Edwards, Ewen, Padilla, Waller, Prince, Friel, and Perea, knew, or should have known, that any warrantless arrest or search, which is the product of such gross violation of an individual's civil liberties would be illegal.

221. The factual support for any probable cause showing is so lacking, that no reasonable police officer would believe that probable cause existed to execute warrantless arrest or searches of Plaintiff and his home.

222. Defendants Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, accused Plaintiff of criminal activity knowing those accusations to be without probable cause.

223. Defendants McGuinness, Yarborough, Sexton, Stahnke, Mowry, Elliott, and Tubbs, made statements to prosecutors, with the intent of exerting influence to institute and continue the judicial proceedings.

224. The statements of the above Defendant Officers, regarding Plaintiff's alleged culpability, were made with knowledge that said statements were false and perjured.

225. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

226. While the aforementioned misconduct took place, the Defendant Officers identified above, personally participated in the misconduct or failed to intervene.

227. The Defendant Officers acts were objectively unreasonable.

228. The Defendant Officers acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

229. The Defendant Officers deprivation of Plaintiff's rights caused Plaintiff damages.

230. The Defendant Officers acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.

28

231. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM FIVE**: **Fourth Amendment- False Arrest/False Imprisonment (September 30, 2019 Warrantless Arrest)::**

Supporting Facts:

232. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

233. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

234. This claim five is being leveled against Defendants City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, and Julie Stahnke, in their individual and official capacities, as employees of Aurora.

235. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, and Stahnke, individually and/or jointly and in conspiracy, falsely arrested and imprisoned Plaintiff without reasonable suspicion or probable cause.

236. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, and Stahnke, are liable for the false arrest and imprisonment of Plaintiff, because it was approximately caused by their unlawful actions as set forth above in Claims I and II.

237. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, and Stahnke's false arrest and imprisonment of Plaintiff continued from on or about September 30, 2019, when the Defendants commenced their unlawful detainment at the hospital, until October 8, 2019, when Plaintiff was formally charged.

238. During this period, Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, and Stahnke, knew they had exculpatory evidence that exonerated   Plaintiff of the crimes.

239. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, and Stahnke, concealed the exculpatory evidence and thereby continued Plaintiff's wrongful imprisonment.

240. As a result of the wrongful acts of Defendants Yarborough, Schoolmaster, Coe, Sexton,

Marsh, and Stahnke, in falsely arresting and imprisoning Plaintiff, he suffered injuries and damages as set forth above.

241. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM SIX: Fourth Amendment- False Arrest/False Imprisonment (October 1, 2019 Warrantless Arrest)::**

Supporting Facts:

242. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

243. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

244. This claim six is being leveled against Defendants City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, Christopher Mowry, Joseph P. Cornell, Patrick Shaker, Chad W. Elliott, Jacob Tubbs, Paul B. Jerothe, Jeffrey Jacobs, Jeremiah Miles, Edward A. Brooks, Michael Dieck, Rhett Fox, Joshua Schoolmaster, Kevin Barnes, Cassidee Carlson, Tyler Riessland, Stephen R. Edwards, Beau Ewen, Kindel R. Padilla, David S. Waller, Jeff Prince, Robert Friel, and Patricia Perea, in their individual and official capacities, as employees of CDHS and Aurora.

245. Defendants Yarborough, Schoolmaster, Coe, Sexton, Marsh, Stahnke, Mowry, Cornell, Shaker, Elliott, Tubbs, Jerothe, Jacobs, Miles, Brooks, Dieck, Fox, Schoolmaster, Barnes, Carlson, Riessland, Edwards, Ewen, Padilla, Waller, Prince, Friel, and Perea, herein "Defendant Officers identified above," individually and/or jointly and in conspiracy, illegally searched Plaintiff's home and falsely arrested and imprisoned him without probable cause or exigent circumstances.

246. The Defendant Officers identified above, are liable for the illegal search of Plaintiff's home and the false arrest and imprisonment of Plaintiff, because it was proximately caused by their unlawful actions as set forth above in Claims I and II.

247. The aforementioned Defendants illegal search of Plaintiff's home and the false arrest and imprisonment of Plaintiff continued from on or about October 1, 2019, when the Defendants commenced their unlawful search of Plaintiff's home and the false arrest, until October 8, 2019,

30

when Plaintiff was formally charged.

248. During this period, the Defendant Officers identified above, knew they had exculpatory evidence that exonerated Plaintiff of the crimes.

249. The Defendant Officers identified above, concealed the exculpatory evidence and thereby continued Plaintiff's wrongful imprisonment.

250. As a result of the wrongful acts of the Defendant Officers identified above, in illegally searching Plaintiff's home and falsely arresting and imprisoning Plaintiff he suffered injuries and damages as set forth above.

251. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM SEVEN: First Amendment-Freedom of Speech (September 30, 2019 Warrantless Arrest):**

Supporting Facts:

252. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

253. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

254. This claim seven is being leveled against Defendants Children's Hospital, Dr. Tara Neubrand, Taylor Mance, City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, in their individual and official capacities, as employees of CHC and Aurora.

255. By reason of the aforementioned speech restriction, outlined in Claim I, including the resolution, created, adopted, and enforced under CHC policies, Defendants denied Plaintiff his right to record their misconduct, which deprived Plaintiff of his right to engage in protected speech in violation of the Free Speech Clause of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

256. Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh's

restriction on Plaintiff's speech, is expressive speech and conduct based, in violation of the Free Speech Clause of the First Amendment.

257. Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh's purpose, for not allowing Plaintiff to record the incident, was to silence Plaintiff, whereas he couldn't show the public their official misconduct.

258. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff suffered irreparable harm, including the loss of his constitutional rights.

259. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM EIGHT: First Amendment-Retaliation (September 30, 2019 Warrantless Arrest):**

Supporting Facts:

260. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

261. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

262. This claim eight is being leveled against Defendants Children's Hospital, Dr. Tara Neubrand, Taylor Mance, City Of Aurora, Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, Dejon Marsh, in their individual and official capacities, as employees of CHC and Aurora.

263. Plaintiff believes, and therefore avers, that his actions of recording Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh's official misconduct, caused Defendants to retaliate against Plaintiff by having him arrested on false charges.

264. Plaintiff's act of recording Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh's official misconduct, is protected First Amendment activity.

265. Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh's retaliation was unlawful and would chill an ordinary person in the exercise of First Amendment rights, namely recording public officials misconduct and verbally asserting his right to not be separated from his son without a probable determination or due process of law.

32

266. Defendants Neubrand, Mance, Yarborough, Schoolmaster, Coe, Sexton, and Marsh, acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.

267. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, caused Plaintiffs injuries.

**CLAIM NINE**: **42 U.S.C. § 1983-Fourth Amendment-Excessive Force (September 30, 2019 Warrantless Arrest):**

Supporting Facts:

268. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

269. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

270. This claim nine is being leveled against Defendants Christopher Yarborough, Max Schoolmaster, Josiah Coe, Sgt. Jeremy Sexton, and Dejon Marsh, in their individual capacities, as employees of the City of Aurora.

271. Plaintiff had a protected Fourth and Fourteenth Amendment interest against being unreasonably seized and victimized by the use of excessive force at the hands of law enforcement personnel.

272. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh, never at any time had a legally valid basis to seize Plaintiff under the circumstances and in the manner described more fully in Claim I of this complaint.

273. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh unlawfully seized Plaintiff by means of excessive physical force.

274. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh had no warrant authorizing any seizure of Plaintiff.

275. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh's actions were objectively unreasonable in light of the circumstances confronting them.

276. Plaintiff had committed no crime nor could Defendants Yarborough, Schoolmaster, Coe,

Sexton, and Marsh have reasonably believed he had committed any crime, to legally justify the use of such force.

277. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh had no reason to fear for their or anyone else's safety, and he was not resisting arrest or fleeing.

278. Accordingly, Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh's act of putting both of Plaintiff's arms in a twist lock and slamming him on his back and the back of his head, constituted excessive force.

279. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference and reckless disregard for Plaintiff's constitutionally protected rights.

280. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force, resulting in the use of excessive force.

281. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the constitutional limits on use of force, particularly regarding how to avoid engaging in racially biased or disproportionately aggressive policing as set forth below in the *Monell* claim.

282. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh were engaged in these acts pursuant to formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful use of force by law enforcement officers, as set forth below in the *Monell* claim.

283. This formal or informal custom, policy and practice of Defendant Aurora is so permanent and well settled as to constitute custom and has been ratified by final policymakers.

284. Plaintiff has been and continues to be damaged by the Defendants unreasonable seizure and use of excessive force.

285. Plaintiff has endured and continues to endure mental pain, including humiliation, fear, anxiety, some loss of enjoyment of life, a fear of a loss of liberty, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

286. Defendants acts or omissions described herein, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of all Plaintiff's damages.

287. At the time when Defendants unlawfully seized him, Plaintiff had a clearly established

constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

288. Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh are not entitled to Qualified (or any other) Immunity.

289. Any reasonable law enforcement officer knew or should have known of this clearly established right.

268. Defendants actions, as described above, were motivated by intent to harm Plaintiff.

290. Defendants actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of all Plaintiff's federally protected rights.

**CLAIM TEN: 42 U.S.C. § 1983-Fourth Amendment-Excessive Force (October 1, 2019 Warrantless Arrest):**

Supporting Facts:

291. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

292. Defendants were acting under color of state law in their actions and inactions which occurred at all relevant times to this action.

293. This claim ten is being leveled against Defendants Kevin Barnes, Edward A. Brooks, Cassidee Carlson, Michael Dieck, Stephen R. Edwards, Beau Ewen, Rhett Fox, Robert Friel, Jeffrey Jacobs, Paul B. Jerothe, Jeremiah Miles, Kindel R. Padilla, Tyler Riessland, Joshua Schoolmaster, David S. Waller, and Patricia Perea, in their individual capacities, as employees of the City of Aurora.

294. Plaintiff had a protected Fourth and Fourteenth Amendment interest against being unreasonably seized and victimized by the use of excessive force at the hands of law enforcement personnel.

295. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea never at any time had a legally valid basis to seize Plaintiff under the circumstances and in the manner described more fully herein.

296. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea unlawfully seized Plaintiff by means of

excessive physical force.

297. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea had no warrant authorizing any seizure of Plaintiff.

298. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea's actions were objectively unreasonable in light of the circumstances confronting them.

299. Plaintiff had committed no crime nor could Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea have reasonably believed he had committed any crime, to legally justify the use of such force.

300. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea had no reason to fear for their or anyone else's safety, and he was not resisting arrest or fleeing.

301. Accordingly, Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea's act of pointing guns at Plaintiff and his son, constituted excessive force.

302. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference and reckless disregard for Plaintiff's constitutionally protected rights.

303. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force, resulting in the use of excessive force.

304. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the constitutional limits on use of force, particularly regarding how to avoid engaging in racially biased or disproportionately aggressive policing as set forth below in the *Monell* claim.

305. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea were engaged in these acts pursuant to formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful use of force by law enforcement officers, as set

forth below in the *Monell* claim.

306. This formal or informal custom, policy and practice of Defendant Aurora is so permanent and well settled as to constitute custom and has been ratified by final policymakers.

307. Plaintiff has been and continues to be damaged by the Defendants unreasonable seizure and use of excessive force.

308. Plaintiff and his son Z.P. has endured and continues to endure mental pain, including humiliation, fear, anxiety, some loss of enjoyment of life, a fear of a loss of liberty, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

309. Defendants acts or omissions described herein, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of all Plaintiff's and Z.P.'s damages.

310. At the time when Defendants unlawfully seized him, Plaintiff and Z.P. had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

311. Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, Friel, and Perea are not entitled to Qualified (or any other) Immunity.

312. Any reasonable law enforcement officer knew or should have known of this clearly established right.

313. Defendants actions, as described above, were motivated by intent to harm Plaintiff.

314. Defendants actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of all Plaintiff's federally protected rights.

**CLAIM ELEVEN: Municipal Liability- Deliberately Indifferent Training and Supervision Resulting in Violations of the Fourth & Fourteenth Amendments (against City of Aurora)**

Supporting Facts:

315. Plaintiff hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

316. Defendants were acting under color of state law in their actions and inactions which

occurred at all relevant times to this action.

317. This claim eleven is being leveled against Defendants City of Aurora, and the Aurora Police Department.

318. The Aurora Police Department is a subdivision of the City of Aurora.

319. Municipalities and their subdivisions may be held liable to an individual if they enforce a policy or custom that causes the deprivation of an individual's constitutional rights.

320. Municipal liability may be based upon:

a. A formal promulgated policy;

b. A well settled custom or practice;

c. A final decision by a municipal policymaker; or

d. Deliberately indifferent training or supervision.

321. Defendant City of Aurora engaged in the following deliberately indifferent training and supervision practices that allowed for various constitutional violations:

a. Failure to train police officers on the proper protocol for making arrest;

b. Failure to ensure that police officers adhere to proper protocol for making arrest;

c. Failure to enforce punishment for violations of directives relating to the arrest of citizens;

d. Failure to train police officers on acceptable legal grounds for probable cause to search citizens homes;

e. Failure to ensure that police officers are only searching citizens homes on the basis of valid probable cause;

f. Failure to enforce punishment for home searches carried out without valid probable cause;

g. Failure to train police officers on acceptable legal grounds for filing criminal charges against citizens;

h. Failure to ensure that police officers are only filing criminal charges against citizens on the basis of valid probable cause;

i. Failure to enforce punishment for police officers that carried out the filling of criminal charges without valid probable cause;

j. Failure to train police officers on the proper protocol on the use of excessive force;

k. Failure to ensure that police officers adhere to proper protocol on the use of excessive force;

l. Failure to enforce punishment for violations of directives relating to the use of excessive force;

322. After the above mentioned incidents, Plaintiff filed administrative complaints with the APD Internal Affairs Bureau.

323. In response, the bureau stated that the officers had done nothing wrong. These actions are consistent with Aurora's custom of condoning and ratifying unconstitutional behavior by its officers.

324. The City of Aurora, and the Aurora Police Department, have a lengthy and well-documented history of conducting unlawful searches and seizures, excessive force, and instituting false criminal charges.

325. The incidents involving Plaintiff, standing alone, is sufficient evidence of these customs and/or practices.

326. Yet, there is more evidence of Aurora's unconstitutional customs, policies, and/or practices, regarding Fourth Amendment violations, stemming from illegal searches and seizures, excessive force, and the institution of false criminal charges.

### A. The City of Aurora Has a Continuing, Persistent, and Widespread Informal Custom of Unlawful Searches and Seizures, Excessive Force, and Instituting False Criminal Charges Against African American Citizens to Cover-Up Police Misconduct

327. On July 8, 2014, APD officers used excessive force against Gaye O'Malley, a 55-year-old Black woman, after she called 911 to request medical assistance for her friend who had fallen and injured herself at home. Without justification, an APD officer took Ms. O'Malley to the ground using an "arm drag takedown," a "twist-lock," and a "prone control hold." The APD officer had a history of unusually aggressive conduct toward citizens, particularly Black people. Ms. O'Malley was handcuffed, arrested, removed from the home, and charged with assault, battery, obstructing a police officer, resisting arrest, and obstructing municipal operations. Aurora later settled an excessive force lawsuit brought by Ms. O'Malley.

328. On November 14, 2015, two Aurora officers ordered Dwight Crews, a 60-year-old, disabled Black man, out of his home under threat of force, despite the fact that the officers had no warrant and no legal justification to effect a warrantless arrest in the home. After Mr. Crews complied,

the officers forcefully threw him to the ground because he had momentarily delayed complying with their illegal commands in order to prevent his cat from getting out of his house. To cover up their unconstitutional conduct, the Aurora officers charged Mr. Crews with resisting arrest. The judge dismissed the charge halfway through Mr. Crews' trial. Upon information and belief, Aurora did not discipline the involved officers for their unconstitutional treatment of Mr. Crews. Aurora paid Mr. Crews to settle his legal claims.

329. On December 22, 2015, several APD officers assaulted OyZhana Williams, a Black woman, who was simply visiting her boyfriend in the hospital. When Ms. Williams refused the officer's illegal order that she give him the keys to her car, the officer tackled Ms. Williams, choked her, slammed her head against the ground, and then stomped on her head. Aurora officers had no probable cause or reasonable suspicion to believe Ms. Williams had committed any crime. Yet, to cover up their excessive use of force, the officers charged Ms. Williams with a crime and arrested her. The charges were dismissed. Upon information and belief, Aurora did not discipline any of the involved officers for their unconstitutional actions. Aurora paid over $350,000 to settle Ms. Williams' claims.

330. On February 19, 2016, Aurora officers stopped and detained Darsean Kelley simply because he was a Black man who happened to be in the vicinity of a reported crime. He questioned the officers' orders and demanded to know whether or not he was being detained. Mr. Kelley complied with officers' orders but also asserted "I know my rights," just as one officer tased him in the back. The Aurora officers conducting the stop had no reason to believe that Mr. Kelley had committed any crime or was armed or dangerous. To cover up the illegal stop and the unjustified tasing, Aurora charged Mr. Kelley with failure to follow a lawful order. That charge was eventually dismissed, but Aurora found no misconduct and did not discipline any of the officers involved in this unconstitutional detention and use of excessive force. Aurora paid Mr. Kelley $110,000 to settle his legal claims pre litigation.

331. On August 12, 2016, two APD officers responding to a report of a Black man with a gun ordered several occupants out of a residence, including then-minor Julian Campbell, who was Black. Mr. Campbell came outside as commanded, and subsequently obeyed all orders the APD officers gave. Nonetheless, the officers grabbed him, slammed him to the ground, handcuffed him, and cited him for disobeying a lawful order. During the subsequent criminal trial of Mr. Campbell, the court granted a motion for judgment of acquittal at the end of the prosecution's

case. A lawsuit based on this incident asserting, among other things, excessive force and racial bias against Aurora and the individual APD officers is ongoing.

332. On July 13, 2017, one APD officer choke-slammed Vanessa Peoples, a Black woman, while police were performing a welfare check in her home. Several other APD officers then piled on Ms. Peoples. What "provoked" the officers' attack was Ms. Peoples' protestations of the officers' misconduct and her failure to be 100% compliant with every single police directive (legal or illegal). Eventually, the officers hog-tied Ms. Peoples so tightly that they dislocated her shoulder. Despite Ms. Peoples' continued cries of pain, APD officers kept her hog-tied for 30 minutes with her shoulder dislocated. APD officers had no reason to believe Ms. Peoples had committed a crime; yet they charged her with obstruction. Those charges were later dismissed. Ms. Peoples settled her potential claims against Aurora for $100,000 pre-litigation. Aurora did not discipline any of the involved officers for their unconstitutional actions.

333. On November 21, 2018, Jamie Alberto Torres was fixing a car in his garage with friends when a neighbor complained about noises coming from the garage. APD officers came to Mr. Torres' home solely to investigate this noise complaint, and one of the officers illegally ordered Mr. Torres to exit his garage, threatening to take him to jail. Because Mr. Torres paused momentarily before complying with the illegal order, the officer grabbed Mr. Torres, wrenched his arm behind his back, picked him up, and slammed him to the ground. Even after handcuffing Mr. Torres, the officer continued to attack Mr. Torres by slamming him to the ground again and wrenching his arm behind his back multiple times. During this encounter, Mr. Torres repeatedly screamed in pain. To justify their illegal conduct, the APD officers charged Mr. Torres with resisting arrest and failure to obey a lawful order. A jury found that Mr. Torres was not guilty of these charges at trial. The Aurora Police Department investigated its officers' use of force against Mr. Torres but, as is customary, found no wrongdoing. A lawsuit based on this incident, claiming excessive force and racial bias, among other things, was settled by Aurora for $285,000.

41

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

i. Issuance of a formal written apology from each Defendant to Plaintiff;

ii. The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendants;

iii. Mandatory training designed to avoid future similar misconduct by Defendants;

iv. Imposition of disciplinary action against appropriate employees of Aurora and Denver;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs; and

h. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

## F.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

6-30-21
(Date)

(Form Revised December 2017)

43