IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01793-RMR-NRN

TEDDY T. PITTMAN,

Plaintiff,

v.

CITY OF AURORA, et al.

Defendants.

---

**REPORT AND RECOMMENDATION ON
CHILDREN'S HOSPITAL COLORADO AND TAYLOR MANCE'S MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT (Dkt. #34),
DEFENDANT CITY OF AURORA AND THE INDIVIDUAL AURORA DEFENDANTS IN
THEIR OFFICIAL CAPACITIES' MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT (Dkt. #35), and
OFFICER DEFENDANTS' MOTION TO DISMISS (Dkt. #37)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #38) issued by Judge

Regina M. Rodriguez referring three motions:

1. Defendants Children's Hospital Colorado ("CHCO") and Taylor Mance's

   (collectively, the "CHCO Defendants") Motion to Dismiss or for Summary

   Judgment (Dkt. #34);

2. Defendant City of Aurora (the "City") and, in their official capacities, Defendants

   Barnes, Brooks, Carlson, Coe, Cornell, Dieck, Edwards, Elliott, Ewen, Fox, Friel,

   Jacobs, Jerothe, Marsh, Miles, Mowry, Perea, Prince, Reissland, Sexton,

   Shaker, Stahnke, Tubbs, and Yarborough's (collectively, the "Aurora

Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #35);
and

3. In their individual capacities, Defendants Christopher Yarborough, Josiah Coe,
Sgt. Jeremy Sexton, Dejon Marsh, Julie Stahnke, Christopher Mowry, Joseph P.
Cornell, Patrick Shaker, Chad W. Elliott, Jacob Tubs (correctly known as Jacob
"Tubbs"), Paul B. Jerothe, Jeffrey Jacobs, Jeremiah Miles, Edward A. Brooks,
Michael Dieck, Rhett Fox, Kevin Barnes, Cassidee Carlson, Tyler Reissland
(correctly known as Tyler "Riessland"), Stephen R. Edwards, Beau Ewen, Jeff
Prince, Robert Friel, and Patricia Perea's (collectively, the "Officer Defendants")
Motion to Dismiss. (Dkt. #37.)

Plaintiff Teddy Pittman ("Plaintiff" or "Mr. Pittman"), proceeding pro se,[1] filed

responses to the Aurora Defendants and Officer Defendants' motions (*see* Dkt. ##45 &

---

[1] Mr. Pittman was not represented by counsel when he filed the operative
pleading or while the subject motions were being briefed. Generally, then, the Court
would review his pleadings and other papers liberally and hold them to a less stringent
standard than those drafted by attorneys. *See Trackwell v. United States*, 472 F.3d
1242, 1243 (10th Cir. 2007) (citations omitted). This case is unusual, however, because
Jared J. Mazzei entered an appearance on behalf of Mr. Pittman on June 21, 2022 (*see*
Dkt. #55), after briefing had been completed. Soon thereafter, the Court ordered that
Mr. Mazzei apprise "the Court whether he plans on filing any motions to further amend
the complaint, to supplement any responses to said motions, or for any other relief, or
whether he is prepared for the Court to rule on the motions to dismiss in due course."
(Dkt. #56.) Mr. Mazzei informed the Court that he did not intend to amend the FAC or
supplement the briefing. (Dkt. #58.) In any event, regardless of whether a plaintiff
proceeds pro se, "conclusory allegations without supporting factual averments are
insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d
1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that
have not been alleged, or that a defendant has violated laws in ways that a plaintiff has
not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170,
1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to
round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159

49), but he did not respond to the CHCO Defendants' motion. All Defendants filed reply briefs. (*See* Dkt. ##50, 51, & 53.) The Court heard argument on the subject motions. (*See* Dkt. #51.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **RECOMMENDED** that the subject motions be **GRANTED**.

## BACKGROUND[2]

This lawsuit arises from Mr. Pittman's arrests by Aurora Police Department ("APD") officers at CHCO on September 30, 2019, and again at his home the next day.

Mr. Pittman was at the hospital in the afternoon of September 30, 2019, with his two-year-old son, E.P. E.P. had been injured when Mr. Pittman's girlfriend, Angela, who suffers from a nerve condition which causes uncontrollable spasms, fell while holding him. E.P. was treated at CHCO by Defendant Mance and Dr. Tara Neubrand.[3] Mr. Pittman was present with E.P. while x-rays were taken and a splint was placed on his leg. Angela's mother, Margarita, also accompanied Mr. Pittman and E.P. to the hospital.

Rather than discharging E.P. after this treatment, Dr. Neubrand and Defendant Mance contacted the Colorado Department of Human Services ("CDHS").[4] Mr. Pittman

---

(10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

[2] Unless otherwise noted, all allegations are taken from Mr. Pittman's First Amended Complaint ("FAC") (Dkt. #14) and are presumed to be true for the purposes of this motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[3] Dr. Neubrand is named as a defendant but does not appear to have been served.

[4] The FAC names the CDHS as a defendant and identifies Alexandra Honny and Nicole Young as CDHS employees. Service was apparently made on the Colorado

explained what had happened to CDHS employees Alexandra Honny and Nicole Young. Dr. Neubrand and Defendant Mance then determined they needed to take more x-rays and said Mr. Pittman could not be present during this additional treatment. Mr. Pittman asked for the hospital policy authorizing this and started to record the situation with his cell phone when his request was refused. Dr. Neubrand and Defendant Mance demanded that Mr. Pittman stop filming, and the APD was eventually called when Mr. Pittman refused CHCO security's commands to stop filming and to leave the hospital.

Officers Yarborough, Schoolmaster,[5] Coe, Sexton, and Marsh arrived on scene. Mr. Pittman described to them what had happened and stated that he had not seen E.P. for about a week before incident because E.P. had been with his biological mother. Officers spoke with Margarita, who confirmed Mr. Pittman's version of events. Nevertheless, Mr. Pittman was placed under arrest. Defendant Coe grabbed him from behind while Defendants Marsh and Sexton took E.P. from his arms. Defendants Yarborough and Schoolmaster each grabbed and twisted an arm, took Mr. Pittman down, and handcuffed him. Mr. Pittman was placed under arrest for disorderly conduct and failure to obey a lawful order. These charges were ultimately dismissed.

Mr. Pittman bonded out of jail the next day, October 1, 2019. He and Angela drove in separate cars to Margarita's house to pick up their son, Z.P, who was also two

---

Attorney General in February 2022 (*see* Dkt. #31), but no responsive pleading has been filed by the department and no returns of service have been filed as to the individual Defendants. Confusingly, the address listed on the FAC for caseworker Bailey McGuinness is the same as the CDHS, but the pleading goes on to state that Ms. McGuinness is actually a caseworker for the Arapahoe County Department of Human Services. In any event, it does not appear that any of these individuals have been served.

[5] This Defendant appears to be incorrectly named and has not been served.

years old. When Angela exited the house with Z.P., she was rushed by "a couple of strange women." Mr. Pittman then took his son and went home in his car.

Apparently, one of the "strange women" was Arapahoe County Department of Human Services caseworker Bailey McGuinness, who was at the house because, at some point, an order placing Z.P. in the temporary custody of the CDHS had been issued by a state court judge. Ms. McGuinness then contacted Defendant Detective Stahnke and claimed that she was concerned about Z.P.'s welfare, despite having seen him, unharmed, at the house. Several APD officers, including Defendants Mowry, Cornell, Shaker, Sexton, Yarborough, Elliott, Tubbs, Jerothe, Jacobs, Miles, Stahnke, Friel, and Perea arrived at Margarita's residence. Angela was questioned.

Defendant Sexton authorized dispatch to ping Mr. Pittman's cell phone to determine his location. A SWAT team, composed of Defendants Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Jacobs, Jerothe, Miles, Padilla,[6] Riessland, Schoolmaster, Waller, Friel, and Perea, was dispatched to the home Mr. Pittman shared with Angela, who had been coerced into signing a waiver and consent to search the residence. The SWAT team entered the home, held Mr. Pittman and Z.P. at gunpoint, and conducted a search. Mr. Pittman was arrested and charged with violation of order relating to parental responsibilities and child abuse.

Mr. Pittman alleges that on October 25, 2019, Defendant Stahnke learned from E.P.'s daycare that E.P. could not put weight on his leg the morning of September 30, 2019, and that Angela had been called and told to take him to the hospital. Angela initially told officers that she picked up E.P. early because she was not feeling well and

---

[6] The Officer Defendants state that this Defendant has not been served.

had left work. When confronted by the Defendant Stahnke with the information from the daycare, Angela changed her story and said that Mr. Pittman had asked to pick E.P. up. Mr. Pittman claims that this exculpatory evidence was not produced in the criminal case. In any event, the violating a court order and child abuse charges were dismissed.

Mr. Pittman asserts eleven claims for relief pursuant to 42 U.S.C. § 1983:

- **Claim One** is brought pursuant to the Fourth and Fourteenth Amendments for malicious prosecution related to the September 30, 2019 warrantless arrest.

- **Claim Two** is brought pursuant to the Fourth and Fourteenth Amendments for malicious prosecution related to the October 1, 2019 warrantless arrest.

- **Claim Three** is a Fourth Amendment illegal search and seizure claim related to the September 30, 2019 warrantless arrest.

- **Claim Four** is a Fourth Amendment illegal search and seizure claim related to the October 1, 2019 warrantless arrest.

- **Claim Five** is a Fourth Amendment false arrest/false imprisonment claim related to the September 30, 2019 warrantless arrest.

- **Claim Six** is a Fourth Amendment false arrest/false imprisonment claim related to the October 1, 2019 warrantless arrest.

- **Claim Seven** is a First Amendment freedom of speech claim related to the September 30, 2019 warrantless arrest.

- **Claim Eight** is a First Amendment retaliation claim related to the September 30, 2019 warrantless arrest.

- **Claim Nine** is a Fourth Amendment excessive force claim relating to the September 30, 2019 warrantless arrest.

- **Claim Ten** is a Fourth Amendment excessive force claim relating to the October 1, 2019 warrantless arrest

- **Claim Eleven** is a municipal liability claim asserted against the City for deliberately indifferent training and supervision resulting in violations of the Fourth and Fourteen Amendments.

## THE SUBJECT MOTIONS

**I. The CHCO Defendants' Motion (Dkt. #34)**

The CHCO Defendants move for dismissal or summary judgement on all claims asserted against them[7] pursuant to Rules 12(b)(1), 12(b)(6), and/or 56(a) of the Federal Rules of Civil Procedure. The main thrust of their argument is that § 1983 applies to public, not private, actors. Because CHCO is a private, non-profit hospital, the Court agrees that dismissal is appropriate under Rule 56.

**a. Rule 56**

Under Rule 56(a), a party may move for summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if

---

[7] Mr. Pittman asserts four claims against the CHCO Defendants: Claim One, Claim Two, Claim Seven, and Claim Eight.

it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

### b. Analysis

Section 1983 "provides a federal cause of action against any person who, *acting under color of state law*, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999) (emphasis added). "[T]he purpose of § 1983 is to deter state

actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted). "Thus, the only proper defendants in a Section 1983 action are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir.1995) (alterations and quotation marks omitted).

Here, the CHCO Defendants have demonstrated that they are, respectively, a privately-owned, non-profit Colorado corporation, and a nurse employed by that private corporation. (*See* Dkt. ##34-1 & 34-2.) Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, the Tenth Circuit has applied the "nexus test," the "public function test," the "joint action test," and the "symbiotic relationship test." *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013).

The only test that could conceivably apply to the instant case is the "joint action" test, which asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453. Although the FAC contains the conclusory allegations that Defendant Mance "conspired" with the CDHS to separate Mr. Pittman from his son, the only evidence before the Court is that Defendant Mance acted in accordance with the course and scope of her employment with CHCO. (*See* Dkt. #31-1 ¶¶ 4–5, Aff. of Michelle Lucero,

Esq. ("At all relevant times, Nurse Mance performed actions consistent with her job description and pursuant to her employment with CHCO. The factual allegations asserted by Plaintiff in the [FAC] concerning actions by Nurse Mance are consistent with her job description and pursuant to her employment with CHCO.").) Because Mr. Pittman failed to respond to the CHCO Defendants' motion, there is no genuine issue of material fact that CHCO and Defendant Mance are purely private actors and, as such, are entitled to judgment on Mr. Pittman's § 1983 claims.

## II. The Officer Defendants' Motion to Dismiss (Dkt. #37)

The Court will next address the Officer Defendants' motion to dismiss pursuant to Rule 12(b)(6) on the grounds of qualified immunity.

### a. Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." Hall, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the

plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

In assessing a motion to dismiss under Rule 12(b)(6), the usual rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[i]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss.). In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### b. Qualified Immunity

In suits brought against officials in their individual capacities, officials may raise the defense of qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory right*s. Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "In their discretion, courts are free to decide which prong to address first in light of the circumstances of the particular case at hand." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quotation omitted).

A qualified immunity defense may be asserted in a Rule 12(b)(6) motion, although a motion for summary judgment under Rule 56 is the more common vehicle for asserting such defenses. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). In asserting a qualified immunity defense in their Rule 12(b)(6) motion, the Officer Defendants have set a higher bar for themselves; "a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jensen*, 371 F.3d at 1202 (internal quotations and citations omitted). In sum, asserting a defense of qualified immunity shifts the burden to the plaintiff, but doing so in the context of a 12(b)(6) motion materially lessens that burden.

### c. Analysis

The Officer Defendants argue that they are entitled to qualified immunity on all of Mr. Pittman's claims for relief. The Court will address each if the Officer Defendants' arguments turn.

### i. Personal Participation

The Officer Defendants first contend that the FAC fails to adequately allege that each Defendant personally participated in the alleged constitutional violations. Specifically, with respect to the first incident, they request dismissal of the claims asserted against Defendant Stahnke and the claims for malicious prosecution and First Amendment violations against Defendants Yarborough, Coe, Sexton, and Marsh. With respect to the second incident, the Officer Defendants seek dismissal of Mr. Pittman's claims against all Defendants—other than as asserted against Defendants Stahnke and Sexton—based on lack of personal participation.

Generally, to hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). In other words, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). "Personal participation in the specific constitutional violation complained of is essential" in a § 1983 action. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). Without an allegation of personal participation, a plaintiff does not state a claim for relief.

Claims One, Three, and Five, which relate to the September 30, 2019 arrest, are asserted against, among others, Defendant Stahnke. But Defendant Stahnke is not alleged to have been at CHCO on September 30, 2019. Insofar as this claim is premised on the allegation that she submitted the arrest affidavit for this incident, "[a] police officer who acts 'in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable.'" *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 882 (10th Cir. 2014) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010)). As discussed below, the Court does not find that Mr. Pittman's arrest at CHCO was based on "flawed conclusions"; probable cause existed to detain him. Accordingly, § 1983 liability cannot be based on the arrest affidavit. Claims One, Three, and Five, as asserted against Defendant Stahnke, fail for lack of personal participation.

The Court also agrees with the Officer Defendants that the FAC does not sufficiently allege that the actions of Defendants Yarborough, Coe, Sexton, and Marsh

are affirmatively linked to a violation of Mr. Pittman's First Amendment rights or his prosecution for the September 30, 2019 incident. First, it was CHCO staff, not any of the Officer Defendants, who demanded that Mr. Pittman stop recording with his cell phone, so Mr. Pittman's First Amendment claim fails as to these Defendants. Second, one element of a malicious prosecution claim is lack of probable cause, and probable cause existed here to arrest Mr. Pittman on September 30, 2019. Therefore, Claims One, Seven, and Eight should be dismissed as to Defendants Yarborough, Coe, Sexton, and Marsh.

The Officer Defendants also argue that in recounting the events of October 1, 2019, Mr. Pittman only describes the specific actions of Defendants Stahnke and Sexton; the other named Defendants are referred to as either the "SWAT TEAM Defendants" in general or as all the APD officers who comprised of the SWAT team as an undifferentiated group. (*See, e.g.,* Dkt. #14 ¶¶ 147 ("The SWAT TEAM Defendants entered the residence and found Plaintiff inside with Z.P.") 148 ("[T]he SWAT TEAM had their assault weapons pointed at Plaintiff and his son.") 149 ("The SWAT TEAM Defendants entered Plaintiff's residence without his consent, a warrant, exigent circumstances, or any legal justification."); 150 ("[T]he SWAT TEAM searched the house for other people and searched his vehicles."); 151 ("The SWAT TEAM arrested Plaintiff and charged him with 'Violation of Order Relating to Parental Responsibilities and Child Abuse.'"); 152 ("The SWAT TEAM Defendants didn't have probably cause to arrest Plaintiff . . . .").

The Court agrees that the FAC's allegations are insufficient to allege personal participation of most of those alleged to have been part of the SWAT team. In § 1983

cases where a number of government actors are sued in their individual capacities, "it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done what to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original); *see also Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated. After all, these are, very basically put, the elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits."). Mr. Pittman failed to make any of this clear in his FAC. "Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *See id.* at 1249–50.

The Court notes that Mr. Pittman's response (Dkt. #45) cites exhibits in the form of footage from a body worn cameras ("BWC") and various law enforcement records to further describe who did what. (*See* Dkt. #46, 46-1–46-8.) The Court will not consider any new allegations contained in the response or the attached exhibits. Mr. Pittman cannot amend his complaint by adding factual allegations in response to a motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss") (citations omitted). The Court is therefore limited to assessing the legal sufficiency of the allegations contained within the four corners of the FAC. Those allegations fail to allege the personal participation of any Defendant but Stahnke and Sexton. Therefore, Claims Two, Four, and Six should be dismissed as to Defendants Yarborough, Schoolmaster, Coe, Marsh, Mowry, Cornell, Shaker, Elliott, Tubbs, Jerothe, Jacobs, Miles, Brooks, Dieck, Fox, Schoolmaster, Barnes, Carlson, Riessland, Edwards, Ewen, Padilla, Waller, Prince, Friel, and Perea. Claim 10 should be dismissed as to all named Defendants (Barnes, Brooks, Carlson, Dieck, Edwards, Ewen, Fox, Friel, Jacobs, Jerothe, Miles, Padilla, Riessland, Schoolmaster, Waller, and Perea).

### ii. Claims for Improper Search and Seizure, False Arrest/False Imprisonment, and Malicious Prosecution.

The Officer Defendants further argue that Mr. Pittman failed to state claims for improper search and seizure, false arrest/false imprisonment, and malicious prosecution as to either incident. None of these three claims are viable if probable cause supported the searching/arresting officers' actions. *See Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 WL 5026195, at *4 (D. Colo. Aug. 26, 2015) ("To allege sufficient facts to support a Fourth Amendment claim for an unlawful search or seizure under § 1983, the Complaint must identify the search and seizure and state facts which, if true, would establish that there was no warrant, probable cause, or other exigent circumstances rendering the search permissible."); *Sexton v. Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 1091936, at *13 (D. Colo. Mar. 19, 2014) ("A claim for false arrest fails if the defendant had probable cause to believe that the plaintiff committed a criminal offense."); *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) ("Under our cases, a

§ 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.").

A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). "Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted).

As to the September 30, 2019 incident, when Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh arrived at CHCO, they were confronted with the following situation. A two-year-old boy had been admitted with a significant leg injury and a rib fracture showing signs of advanced healing. CHCO medical personnel were concerned enough to contact the CDHS about the boy's injuries. CDHS employees were dispatched to the scene and were present when the officers arrived. Mr. Pittman

would not allow medical staff to provide E.P. with additional treatment without Mr. Pittman being present and refused to leave the hospital when CHCO security asked him to. He also declined to stop filming after CHCO employees told him that doing so violated their policies. The officers did not arrest Mr. Pittman right away. Instead, they spoke to him and his mother about what had happened. Mr. Pittman was only arrested after he continued to refuse to allow medical staff to complete the examination of his son.

Mr. Pittman essentially argues that the officers lacked probable cause to arrest him because he told them what had happened and that his story was corroborated by Margarita. "But probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018). Defendants Yarborough, Schoolmaster, Coe, Sexton, and Marsh were under no obligation to accept Mr. Pittman's explanation at face value and halt any further investigation. And Mr. Pittman's steadfast refusal to allow medical staff to see E.P. alone, along with the nature of the child's injuries, constitute "suspicious facts" sufficient for a reasonable officer to conclude that there was a substantial chance of criminal activity.

The question before the Court, however, is not whether there was probable cause to arrest Mr. Pittman for child abuse, at least as to Claims One, Three, and Five. Mr. Pittman was arrested on September 30, 2019 for disorderly conduct and failing to obey a lawful order. Viewing the totality of the circumstances described in the FAC, the Court finds that a reasonable officer could conclude that there was probable cause to believe Mr. Pittman committed disorderly conduct under Colorado law (*see* Colo. Rev.

Stat. § 18-9-106) or the City's Municipal Code (*see* Aurora City Code § 94-110) at CHCO on September 30, 2019.

Moreover, the Court finds that Mr. Pittman's October 1, 2019 arrest for violating an order relating to parental responsibilities and child abuse was supported by probable cause. While Mr. Pittman claims the order temporarily placing Z.P. into custody was based on false information, there is no dispute that such an order was entered. Defendant Stahnke was informed by Ms. McGuinness, the caseworker who had apparently received this custody order from a judge, that she believed Z.P had been kidnapped and was in danger. Defendant Stahnke is entitled to qualified immunity if she relied on these statements, so long as that reliance was objectively reasonable. *See Halley*, 902 F.3d 1136, 1150 (10th Cir. 2018) (recognizing that a police officer can act in reliance on the flawed conclusions of a fellow officer and noting that the plaintiff "provides no cases clearly establishing that officers cannot rely on DHS officials just as much as on fellow officers"). In light of the custody order, the fact that Mr. Pittman had, in Ms. McGuinness's presence, taken Z.P. and left with him in his car, and given the injuries E.P. had been treated for the day before at CHCO, it was objectively reasonable to believe that (1) Mr. Pittman had violated a court order by taking Z.P., and (2) Z.P. was in danger.

Under these circumstances, Defendant Sexton's authorization of the ping on Mr. Pittman's cell phone to determine his location and the subsequent search of Mr. Pittman's home was justified by exigent circumstances. Exigent circumstances exist when:

> (1) the law enforcement officers . . . have reasonable grounds to believe
> that there is immediate need to protect their lives or others or their property

> or that of others, (2) the search [is not] motivated by an intent to arrest and seize evidence, and (3) there [is] *some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.*

*United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992) (alterations in original). Here, given the statements by Ms. McGuinness, the APD had reasonable grounds to believe that Z.P. was in physical danger in Mr. Pittman's custody.

Regarding the child abuse charge, Mr. Pittman claims that various Defendants, including Stahnke and Sexton, "falsely averred or claimed, that Plaintiff caused 'E.P.'s injuries, which included a broken femur, fluid around internal organs, bruising behind both ears, and rib fractures that were in various stages of healing.'" It is unclear whether the alleged falsity of this statement extends beyond Mr. Pittman's putative involvement to the nature of E.P.'s injuries. However, it appears from Mr. Pittman's own allegations that *someone* was physically abusing E.P. According to Mr. Pittman, E.P.'s biological mother "had been reported to CDHS for abusing the child," and E.P. had recently been in her custody. E.P. had also been with Angela on September 30, 2019. Indeed, Mr. Pittman appears to imply that Angela knew more about E.P.'s injuries then she let on, noting that E.P.'s leg was injured that morning and that Angela had changed her story about why she picked him up from school. This simultaneously undercuts Mr. Pittman's claim that the officers should have accepted his statement that E.P. had been injured when Angela fell on him, and supports Ms. McGuinness's suspicion, attributed to her by Mr. Pittman, that "Angela was involved in both incidents." In any case, the totality of the circumstances, including the nature and severity of E.P.'s injuries and Mr. Pittman's adamancy that E.P. not receive additional medical treatment outside of his presence, is enough to establish probable cause of child abuse.

Because the September 30 and October 1 searches and seizures were supported by probable cause or justified by exigent circumstances, Claims One through Seven should be dismissed as to the Defendants Stahnke and Sexton, the only Officer Defendants against whom Mr. Pittman adequately alleged personal participation.

### iii. Excessive Force

In assessing an excessive force claim under the Fourth Amendment, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. It must also "allow[ ] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "An excessive force claim that includes a challenge to the manner or course of handcuffing requires the plaintiff to show both that the force used was more than reasonably necessary and some non-de minimis actual injury." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (internal quotation marks omitted).

Mr. Pittman has not stated an excessive force claim arising from either arrest. The Court agrees with the Officer Defendants that Mr. Pittman does not allege that the force used during the September 30, 2019 arrest was any more than was necessary to

remove E.P. and place the handcuffs on Mr. Pittman. As to the second arrest, Mr. Pittman alleges that the SWAT team trained guns on him and his son, but, as discussed above, he does not specify which Defendant pointed a weapon.

In his response, Mr. Pittman claims that the force used was excessive in both circumstances simply due to the absence of probable cause. The Court has already found that there was probable cause, so this argument is unpersuasive. Claims Nine and Ten should be dismissed.

### III. The Aurora Defendants' Motion to Dismiss (Dkt. #35)

Finally, the Court addresses the Aurora Defendants move to dismiss the FAC under Rule 12(b)(6).

As an initial matter, Mr. Pittman asserts claims against both the various APD officers in their official capacities and the City of Aurora. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). Accordingly, where a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as "duplicative" or "redundant" of the claim against the municipal entity. *See Leadholm v. City of Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9, 2017). The official capacity claims against the individual defendants should be dismissed.

More substantively, a municipality's liability is derivative of the underlying officer's liability. *LA v. Heller*, 475 U.S. 796, 799 (1986). Since the Court finds that Mr. Pittman

has failed to state a claim for any violation of his constitutional rights, the Court further finds that the City is not liable under a theory of municipal liability.

<u>**RECOMMENDATION**</u>

It is hereby **RECOMMENDED** that the subjection motions (Dkt. ##34, 35, & 37) be **GRANTED** and that Plaintiff's First Amended Complaint (Dkt. #14) be **DISMISSED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:       October 17, 2022
             Denver, Colorado            _____
                                         N. Reid. Neureiter
                                         United States Magistrate Judge